# United States District Court
## Southern District of Florida

### Case No. 14-81476-Civ-Zloch

Megdal Associates, LLC,

              Plaintiff,

     vs.

La-Z-Boy Incorporated,

             Defendant.

**Jury Trial Demanded**

**Megdal Associates' Opposition to Defendant La-Z-Boy's Renewed Motion To Compel Deposition Testimony From Janice Faller and Leland Schermer and Memorandum in Support of Megdal Associates' Renewed Cross-Motion To Limit Janice Faller and Leland Schermer's Deposition Testimony**

Pursuant to Federal Rules of Civil Procedure 26 and 30(d)(3), Megdal Associates, LLC hereby moves the Court for an order prohibiting Janice Faller's deposition and Leland Schermer's deposition from being re-opened to pursue questions regarding their personal and marital finances, including for example, Janice Faller's Last Will and Testament, the couple's estate plan, marital finances, and bank account information. The following memorandum is submitted in Opposition to Defendant La-Z-Boy's Renewed Motion To Compel Deposition Testimony From Janice Faller and Leland Schermer and in support of Megdal Associates' Renewed Cross-Motion to Limit Janice Faller and Leland Schermer's Deposition Testimony.

## Introduction

La-Z-Boy has filed *five* motions seeking the answer to a simple question that La-Z-Boy never asked Janice Faller or Leland Schermer in their combined *twenty-one hours* and four days of deposition: Does Megdal Associates acknowledge that Mr. Schermer has an interest in the outcome of this case? Critically, Megdal Associates has never denied that Mr. Schermer has an interest in the outcome of this lawsuit based on his marriage to Ms. Faller. To the contrary, Megdal Associates has *repeatedly* explained to La-Z-Boy, and represented to this Court, that Mr. Schermer has an interest in the outcome of this case through his marriage to member Janice Faller, a one-third owner of Megdal Associates. *See, e.g.*, D.I. 99 at 13-14 ("La-Z-Boy knows that neither Megdal Associates nor Mr. Schermer denies that Mr. Schermer has an interest in the outcome of this case, albeit an indirect one."); D.I. 118 at 4 ("Critically, Megdal Associates has never denied that Mr. Schermer has an interest in the outcome of this lawsuit based on his marriage to Ms. Faller."). And La-Z-Boy already received deposition testimony and discovery on Megdal Associates' finances from both Mr. Schermer and Ms. Faller, including exactly what happens to Ms. Faller's LLC shares upon her death. In fact, Ms. Faller and Mr. Schermer answered all questions regarding finances ***as they related to Megdal Associates***. Nonetheless, La-Z-Boy burdens the Court and Megdal Associates, through differently styled motions all aimed at getting the answer to the same

1

single deposition question it never asked. Rule 1 of the Federal Rules of Civil Procedure requires that this waste and burden associated with La-Z-Boy's unnecessary motion practice come to an end.

Instead of just asking if Mr. Schermer has an interest in the outcome of this case, La-Z-Boy instead seeks to brazenly intrude on the personal and private finances and estate plans of Ms. Faller and Mr. Schermer. La-Z-Boy tries to justify this invasion of privacy simply because Ms. Faller, a member of Megdal Associates is married to Leland Schermer, an attorney who provides legal counsel to Megdal Associates. La-Z-Boy has never identified—in any of its repeated motions on this subject—any claim or defense in this breach of contract business dispute between Megdal Associates, LLC and La-Z-Boy, Inc., to which this personal and sensitive information is relevant. Indeed, there is none. Instead, La-Z-Boy's only purported justification is witness bias/credibility. But if that were enough, then every principal of every business entity involved in commercial litigation, who "stands to benefit" if the entity prevails in the litigation, would be subject to disclosing their personal financial information, and will and estate plans in discovery. La-Z-Boy has not cited a single case to stand for this dramatic proposition. And for good reason—there is no such case.

In the face of La-Z-Boy's relentless pursuit, Megdal Associates undertook great efforts to address this issue with La-Z-Boy without involving the Court and to avoid duplicative motions practice before, during, and after the depositions of Ms. Faller and Mr. Schermer. Indeed, because termination of the depositions was not required by the Federal Rules of Civil Procedure, Megdal Associates' narrowly tailored objections to La-Z-Boy's questions were proper. The objections preserved Megdal Associates' positions and were tied to the specific and finite dispute between the parties regarding the personal, marital information of Mr. Schermer and Ms. Faller, which was pending before the Court at the time of the depositions.

La-Z-Boy's motion to compel further testimony of Janice Faller and Leland Schermer on their marital finances seeks information that is not only irrelevant, but so personal and

private that La-Z-Boy's efforts to seek that information is harassment. The Federal Rules of Civil Procedure do not require Megdal Associates' members to disclose such information in any form—whether at a deposition or not. La-Z-Boy's motion to compel, therefore, should be denied, and Megdal Associates' cross-motion to limit the depositions should be granted.

**Factual Background**

**I.    Megdal Associates is a family business, and attorney Leland Schermer has provided legal services to Megdal Associates as a favor to the family, without charging for his time.**

This case is a business dispute between two companies over certain trade secrets and inventions involving power motion furniture. In 2000, the late Paul Megdal founded a family business, Megdal Associates, LLC ("Megdal Associates"), to manage and hold the rights in his trade secrets and inventions. The original members of Megdal Associates included Paul Megdal, Dr. William Megdal (Paul Megdal's son), and Janice Faller (Paul Megdal's niece). Dr. Megdal and Ms. Faller each invested financially in Megdal Associates to become members. When Mr. Megdal died in 2005, his shares went to Terry Megdal (his daughter), according to the Megdal Associates Operating Agreement. Ex. A, ¶ 2.7(b).[1] Each of the three members currently holds a one-third interest in Megdal Associates.

Janice Faller's husband, Leland Schermer, is an attorney who has provided legal services to Mr. Megdal and thereafter to Megdal Associates, and continues to do so, as a favor to his wife's family, without charging for his time. Mr. Schermer provided legal advice to Mr. Megdal as he sought to develop and license his trade secrets and inventions to La-Z-Boy. From 1999 through 2002, La-Z-Boy and Megdal Associates negotiated a license agreement relating to Mr. Megdal's trade secrets and inventions. Mr. Schermer represented Mr. Megdal and Megdal Associates throughout the negotiations with La-Z-Boy. The current litigation is a result of La-Z-Boy's failure to pay royalties to Megdal Associates under the 2002 License Agreement. Mr. Schermer was Megdal Associates' 30(b)(6) witness

---

[1]    All exhibits are attached to the Declaration of Patrick Arenz.

3

in this case because, as Megdal Associates has repeatedly explained, Paul Megdal has died and Mr. Schermer is the most knowledgeable witness on the relevant facts underlying the parties' claims and defenses. La-Z-Boy also deposed Mr. Schermer individually for an additional seven hours. Megdal Associates has never denied that Mr. Schermer has an interest in the outcome of this lawsuit based on his marriage to Ms. Faller. *See, e.g.*, D.I. 99 at 13-14 ("La-Z-Boy knows that neither Megdal Associates nor Mr. Schermer denies that Mr. Schermer has an interest in the outcome of this case, albeit an indirect one.").

**II.   La-Z-Boy has received ample discovery, including deposition testimony on Megdal Associates' finances in the twenty-one hours of deposition testimony that La-Z-Boy already took of Mr. Schermer and Ms. Faller.**

In this case, La-Z-Boy has already had a full and fair opportunity to depose Megdal Associates, Mr. Schermer, and all its members. La-Z-Boy has deposed each of the three members, including Ms. Faller, in this case for full days each. Arenz Decl., ¶¶ 23-26. Those three depositions, in fact, totaled over 800 pages, and included questioning for each witness on Megdal Associates' finances. *Id.*; *see also* Exs. E-F; Exs. O-Q. And on September 29 and 30, 2015, La-Z-Boy deposed Mr. Schermer for 14 hours, generating *six-hundred and thirteen pages* of testimony. Arenz Decl., ¶ 26. Mr. Schermer responded to numerous questions regarding finances relating to Megdal Associates and Ms. Faller. As a non-limiting example, Mr. Schermer provided the following testimony:

> Q.   To your knowledge, how much money did your wife put into the company, Megdal Associates?
> A.   I believe 30,000 dollars.
> Q.   Did you see those checks?
> A.   Yes.
> Q.   Who were they written to?
> A.   I can't recall with certainty. The expenses were primarily the formation expenses, entity formation expenses. Accounting expenses. And the Finnegan Henderson firm expenses. So whether the checks were made payable to Megdal and Megdal cut checks, whether they were payable to the creditors, if you will, [directly], I cannot recall. But I do recall that the contribution of Bill and Janice, I do recall 30,000 dollars. I recall three payments, 2,000 early, 10,000 and 18,000.

4

Q.      And how much money did your wife receive from Megdal Associates -- from La-Z-Boy. No, from Megdal Associates? Strike that. How much money did your wife receive from Megdal Associates?

A.      The total payments were in the high 300,000 dollars. There were obviously other expenses along the way. My feeling is that it was over the years collectively about 100,000 dollars.

Q.      Over and above the 30 she put in?

A.      No. I think that's net. So probably she got back -- she profited to the extent of around 70. If I recall correctly.

Q.      Did you have any interest in any account into which Janice Faller put money that was distributed from Megdal Associates?

MR. ARENZ: You can answer that as it relates to the money from Megdal Associates.

A.      I am interested in hearing the question again.

Q.      Did you have any interest in any account into which your wife put distributions from Megdal Associates?

A.      No. Not distributions. No.

Q.      Were any distributions from Megdal Associates paid into a joint account with you and your wife?

A.      I don't believe so. I think she got the money from my [sic: an] account that was in her name alone. And I think she deposited the distributions into that account. But it's been a long time. I cannot be certain.

                \* \* \*

Q.      If Megdal Associates were to win a sizable judgment, what portion of that would go to your wife?

MR. ARENZ: Objection. Form.

A.      My understanding is it would be one-third.

Q.      And do you have an understanding as to whether or not you would share in any of that with your wife?

A.      I mean, it's conjectural, but we have a good marriage. We tend to share things. So it wouldn't be out of the realm of possibilities.

Ex. Q at 307:21-309:18; 310:23-311:7. Likewise, Ms. Faller provided extensive deposition testimony regarding her financial contribution to Megdal Associates and only declined to answer questions regarding her personal marital finances and estate plan, which fall well outside the scope of fair discovery in this business dispute. *See* Ex. G at 40:19-44:15, 160:21-161:14; 257:22-259:17. Ms. Faller and Mr. Schermer answered all questions regarding finances *as they related to Megdal Associates*. Megdal Associates also produced its Operating Agreement to La-Z-Boy, which details what happens to each member's shares upon their

86304678.1

death, and each member and Mr. Schermer provided testimony regarding the same. *See* Ex. A, ¶ 2.7(b); Ex. Q at 236:9-237-23; Ex. F at 12:18-29:1; Ex. O at 171:11-174:10; Ex. P at 140:2-141:22.

In addition to the depositions of Mr. Schermer, Ms. Faller, the other Megdal Associates members, and Megdal Associates' 30(b)(6) deposition of Mr. Schermer, Megdal Associates has answered four sets of detailed interrogatories, 112 Requests for Admission, and two sets of detailed requests for production. *See, e.g.*, Arenz Decl., ¶ 22. In all, the record is clear that La-Z-Boy has had extensive opportunities to ask, and did ask, and has received answers to, questions on Megdal Associates' finances. What La-Z-Boy seeks in its motion to compel—the personal and private financial matters of Leland Schermer or Janice Faller—are not related to the claims and defenses in this case and are improper.

## III. La-Z-Boy has relentlessly pursued discovery of the personal and marital finances and estate plan of Leland Schermer and Janice Faller during litigation of this corporate dispute.

Despite the fact that this case involves a dispute between two companies, La-Z-Boy has repeatedly demanded discovery into Leland Schermer and Janice Faller's private and personal marital and financial information and estate plan. La-Z-Boy filed *five separate* motions with the Court seeking to compel disclosure of this private, non-relevant information.[2] First, La-Z-Boy sought to trace all funds in and out of Megdal Associates, including what members did with distributions for the purpose of attempting to trace funds to Mr. Schermer through a request for production. *See* D.I. 59, 76, and 82 (renewed by La-Z-Boy as D.I. 170). Second, La-Z-Boy sought private information on Janice Faller's Last Will and Testament, estate plan, bank accounts, private marital financial information, and Pennsylvania's law on marital property through a series of requests for admission. *See* D.I. 97, 99, and 102 (renewed by La-Z-Boy as D.I. 170). For instance, La-Z-Boy sought the

---

[2]     Upon granting Megdal Associates' Motion for Leave to File Its First Amended Complaint, the Court dismissed without prejudice the pending discovery motions. *See* D.I. 153. La-Z-Boy has renewed its motions regarding these issues. *See* D.I. 170; D.I. 171.

following admissions:

- Request No. 27: Please admit that Leland Schermer is a Beneficiary Under Janice Faller (Janice Faller Schermer)'s Estate Plan.

- Request No. 28: Please admit that, in the event that Janice Faller (Janice Faller Schermer) Pre-Deceases Leland Schermer, Leland Schermer will Receive her Interest in Megdal.

- Request No. 29: Please admit that Leland Schermer and Janice Faller (Janice Faller Schermer) Hold a Joint Account together.

Ex. B. These topics plainly have no bearing on any claim or defense in this corporate dispute. This personal financial information is private and unconnected to any of the claims and defenses in this case. Notwithstanding this fact, La-Z-Boy now seeks to reopen the depositions of both Leland Schermer and Janice Faller to pursue this discovery.[3]

**IV. Over the course of a long meet-and-confer process, Megdal Associates attempted to avoid motion practice by seeking an agreement with La-Z-Boy to bar questions on Mr. Schermer and Ms. Faller's personal and private financial information.**

Megdal Associates undertook significant efforts to avoid further motion practice over the issue on the discoverability of personal finances of Mr. Schermer and Ms. Faller, a member of a corporate party in a civil case. The following timeline details these extensive efforts, and further demonstrates the lack of a similar effort from La-Z-Boy.

**A. Events before Janice Faller's and Leland Schermer's depositions**

**June 15, 2015:** Megdal Associates answered La-Z-Boy's Second Set of Requests for Admission, and objected to Requests Nos. 24-30 seeking private personal and marital financial information of Janice Faller and Leland Schermer. Ex. B.

---

[3]    If the Court deems this subject matter discoverable, there is no reason to require two witnesses to fly from Pennsylvania to Florida for what will be only a few questions. Written interrogatories or a telephone deposition would suffice, as La-Z-Boy has had two days each to depose Mr. Schermer and Ms. Faller in person. *See* Fed. R. Civ. P. 1.

**June 24, 2015:** The parties held a meet-and-confer regarding Requests Nos. 24-30 of La-Z-Boy's Second Set of Requests for Admission. During these discussions Megdal Associates explained that it would stand on its objections because of the then pending motion addressing whether La-Z-Boy is entitled to discovery on the personal finances of Megdal Associates' members. Arenz Decl., ¶ 4.

**July 15, 2015:** The day before the deposition of La-Z-Boy's attorney, Paul Keller, La-Z-Boy filed a motion to compel Megdal Associates to answer its requests for admission regarding Janice Faller's private personal and marital finances. D.I. 97. This was the last day before the Court's 30-day requirement to bring a discovery dispute. *See* L.R. 26.1(i). And because it was three weeks after the meet-and-confer, Megdal Associates believed that La-Z-Boy decided not to proceed with this discovery dispute until it received notice of the filing. La-Z-Boy recently renewed this motion with the Court. *See* D.I. 170.

**July 16, 2015:** The day after La-Z-Boy filed its original motion to compel, and immediately after the conclusion of the deposition of La-Z-Boy's attorney Paul Keller, counsel for Megdal Associates and La-Z-Boy discussed the impact of La-Z-Boy's motion to compel answers to certain requests for admission on the scope of Janice Faller's upcoming deposition. Arenz Decl., ¶ 5. During this discussion, it was Megdal Associates' understanding that the parties agreed that inquiry at Ms. Faller's deposition into the same topics covered by La-Z-Boy's pending motion would be governed by the Court's decision on the then pending motion, D.I. 97, and there would be no need for yet further motions to be filed with the Court on the same topic. Arenz Decl., ¶ 5.

**July 21, 2015:** The morning of Ms. Faller's deposition (two business days following Mr. Keller's deposition), counsel for Megdal Associates e-mailed counsel for La-Z-Boy to confirm the parties' understanding of the July 16th agreement. Megdal Associates' counsel's e-mail stated:

> As we discussed after Mr. Keller's deposition, we agreed that La-Z-Boy filed a motion to compel relating to RFA responses which you indicated you may ask Ms. Faller about at her

> deposition. Because the motion is pending, we agreed that that motion will resolve the issue, and therefore there is no need to adjourn the deposition today to seek a protective order for questions on that subject if she does not answer the question (which of course would moot La-Z-Boy's motion and our objections).

Ex. C. Counsel for Megdal Associates was surprised to receive a response from La-Z-Boy stating that "[w]e made no such agreement." *Id.* Nonetheless La-Z-Boy's counsel confirmed that "it was not my intention to terminate the deposition of Ms. Faller were she not to answer such questions . . . I am more inclined to continue with the examination, and if appropriate to move to compel." *Id.*

**B. At Janice Faller's deposition, the parties continued to discuss how they intended to deal with La-Z-Boy's questioning on the same topics as the pending motion on La-Z-Boy's requests for admission.**

**July 21, 2015:** During Ms. Faller's deposition, which was split across two days to accommodate Ms. Faller's medical condition, La-Z-Boy's counsel questioned Ms. Faller about the finances of Megdal Associates and about her personal and marital finances and estate plans. *See* Ex. F; Ex. G. Some of the questions during the deposition were the mirror images of the requests for admission that are the subject of the motion to compel. *See generally* Ex. D; Ex. E. For instance:

Q. Is Leland Schermer your beneficiary under your will?

Q. Do you have joint accounts with Leland Schermer?

Q. Are your finances within your marriage generally shared?

Q. In the event that you were to predecease Leland, I'm not trying to bump you off here, is it accurate to say that Leland will receive your interest in Megdal?

Ex. E at 257:22-250:9; Ex. G.

Ms. Faller answered all questions regarding her finances *as they related to Megdal Associates*. *See generally* Ex. F; Ex. D at 7:7-9:25, 10:22-23, 11:7-18, 23:18-24:17, 25:18-29:1, 37:18-38:17, 39:3-40:18, 45:4-46:4, 72:9-32:6, 101:6-102:24; Ex. E at 162:15-166:20, 173:4-

174:7, 179:24-180:16, 185:22-187:17, 221:18-222:6, 261:2-22. Ms. Faller did not answer

questions related solely to her private personal and marital finances *that were not limited to*

*any finances associated with Megdal Associates*. *See generally* Ex. G; Ex. D at 40:19-44:15; Ex.

E at 160:4-162:8.

At the end of the deposition, counsel for Megdal Associates inquired about how to

proceed with this issue, and whether it was necessary for Megdal Associates to file a motion

to limit the deposition:

> My question is just based on the questions and answers that
> you asked and received or didn't receive, do you suggest we
> proceed on the motion you already have pending on the same
> subject? Or would you require a separate motion, affirmative
> motion on our part which would be overlapping? I'm happy to
> do that, and I will do that without an agreement. But for the
> convenience of the court, since there are similar subjects, I just
> want to get your position.

Ex. D at 134:13-23. Counsel for La-Z-Boy indicated that they would discuss this issue at the

end of the second day of deposition. *Id.* at 134:24-135:1.

**July 22, 2015:** La-Z-Boy revisited the same topic on the second day of the deposition.

*See, e.g.*, Ex. E at 160:4-162:8, 257:22-259:17; *see generally* Ex. G. Upon the completion of

Ms. Faller's deposition, counsel for Megdal Associates again revisited how La-Z-Boy would

like to deal with the questions about Ms. Faller's personal and marital finances and estate

plans, and whether it was necessary to file a motion to limit the deposition. Ex. E at 263:10-

266:7.

> MR. ARENZ: So my proposal, I think that is a fair idea,
> is for you to review the transcript when you get it, confer with
> your client, why don't you give me an opportunity also to
> review the transcript and do the same.
>
> And if we can agree that the questions will rise and fall
> together, perhaps we can do that and make an efficient process
> for Judge Locke [sic: Judge Zloch].
>
> Alternatively, if we can't reach that agreement, we can
> decide if a separate motion is necessary or not.

> MR. LANDA: That's fine. I have no problem agreeing to chat with you about that after we have seen the transcript.

*Id.* at 265:19-266:7.

> MR. LANDA: Well, I don't have the transcript. I don't know when it will be ready. And we would tell you as soon as we have formed an opinion one way or the other.
>
> MR. ARENZ: So from that, I am understanding that our kind of meet and confer on that subject is open, and we will look forward to hearing from you regarding whether a motion to limit the deposition on those topics is necessary or not?

*Id.* at 264:4-13. As shown above, counsel for La-Z-Boy wanted to review the transcript, discuss the issue with its client, and then confer further with counsel for Megdal Associates. Counsel for Megdal Associates found this to be a reasonable protocol, and explicitly hoped to avoid *unnecessary motion practice* on this issue. *See, e.g., id.* at 264:23-265:2.

### C. After Ms. Faller's deposition, Megdal Associates continued to try and reach an agreement with La-Z-Boy in order to avoid additional motions practice.

**July 28, 2015:** The next week, after both parties had time to review the deposition transcript of Ms. Faller's deposition, Megdal Associates counsel followed up with La-Z-Boy to discuss how the parties would like to handle the issues related to La-Z-Boy's questions regarding Ms. Faller's private personal and financial information. Megdal Associates proposed the following:

> . . . we will agree to make Ms. Faller available to address those questions if (1) the Court were to grant La-Z-Boy's pending motion to compel additional RFA response, and (2) La-Z-Boy does not have the information it seeks on the subject after receiving any supplemental RFA responses and deposing Mr. Schermer. As part of this proposal, La-Z-Boy would agree that Megdal Associates does not need to file its own motion of Ms. Faller's deposition and La-Z-Boy will not seek any further relief with respect to her depositions.

Ex. H. Quite clearly, Megdal Associates sought to avoid yet another motion on this same subject until the previous motions on the same subject were resolved. La-Z-Boy responded without addressing this proposal, but instead raised additional discovery issues including

requesting that Ms. Faller's deposition be re-opened on separate grounds. Ex. I; Ex. J. La-Z-Boy did not otherwise comment on Megdal Associates' proposal and did not offer a different solution.

**July 30, 2015:** Megdal Associates reached out to La-Z-Boy again, requesting a response to its proposal.

> This is the most efficient way forward for the parties and the Court. We will respond in a separate letter to your statements regarding Megdal Associates' document production, except to say that these complaints do not change that the proposal in my July 28 email is the most efficient way forward.
>
> Please let us know how La-Z-Boy would like to proceed.

Ex. K. La-Z-Boy never responded.

**August 17, 2015:** Megdal Associates again asked La-Z-Boy for a response to Megdal Associates' proposal on how to avoid additional motions practice. "I wanted to check in about La-Z-Boy's position on the proposal below. I have not heard back from you on it. Please let me know if La-Z-Boy agrees to proceed below to avoid further motion practice on this issue." Ex. L.

**August 20, 2015**: La-Z-Boy responded to Megdal Associates rejecting the proposal and requesting that Ms. Faller's deposition be re-opened to allow La-Z-Boy to question her regarding her personal and marital finances and estate plans. This letter was sent on Thursday, August 20, 2015. Ex. M.

**August 21, 2015:** The next day, without any further discussion with Megdal Associates, or without allowing Megdal Associates time to respond (even after ignoring multiple polite requests from Megdal Associates), La-Z-Boy filed its original motion to compel Janice Faller's deposition testimony. D.I. 110. Megdal Associates opposed the motion and cross-moved to limit Ms. Faller's testimony. D.I. 118. The Court summarily dismissed without prejudice both La-Z-Boy's original motion and Megdal Associates' cross-motion. Because La-Z-Boy renewed its motion, Megdal Associates similarly renews its

cross-motion to limit Ms. Faller's testimony.

### D. Before Mr. Schermer's deposition, Megdal Associates continued to try to reach an agreement with La-Z-Boy to limit questions regarding personal and private financial information.

La-Z-Boy deposed Mr. Schermer for fourteen hours over two days on September 29-30, 2015. Before the deposition, counsel for Megdal Associates reached out to counsel for La-Z-Boy to discuss the issue regarding personal and private financial questions that La-Z-Boy expected to ask Mr. Schermer. Ex. N. Counsel spoke on September 24, 2015 and La-Z-Boy stated that it would not enter into any agreement to limit those types of questions at the deposition. As a result, Megdal Associates moved the Court for a Protective Order on September 28, 2015, asking the Court to issue an order protecting Mr. Schermer from answering questions regarding the personal finances and estate plan of he and his wife Janice Faller. D.I. 128. Upon granting Megdal Associates' motion for leave to file its First Amended Complaint, the Court summarily dismissed without prejudice Megdal Associates' motion for a protective order. D.I. 153. Afterwards, and before the parties sought to renew any dismissed motions, Megdal Associates again reached out to La-Z-Boy. *See* Ex. R.

Megdal Associates specifically sought to streamline all the disputes regarding this common issue of finances and estate plan that had spread over La-Z-Boy's multiple prior motions and Megdal Associates' cross-motion to limit Ms. Faller's deposition and protective order motion regarding Mr. Schermer's deposition. *See id*. For instance, Megdal Associates' counsel explained: "it is our goal to streamline the dispute as best as possible for the Court. To that end, we are willing to withhold our motion to limit the depositions of Ms. Faller and Mr. Schermer to avoid repetitive briefs, but only if La-Z-Boy will refrain from any arguments that Megdal Associates failed to file such a motion. I am happy to discuss this further if it would help." *See id.* Nonetheless, as was the case in the earlier meet-and-confer process, La-Z-Boy never responded, and proceeded to renew its motion anyway without consideration of Megdal Associates' proposal.

13

## Argument

**I.    La-Z-Boy is not entitled to depose Janice Faller or Leland Schermer on private information regarding their personal and marital finances and estate plans because these topics are not relevant and can only serve to harass or annoy.**

La-Z-Boy is not entitled to discovery of Janice Faller and Leland Schermer's private and personal financial and marital information and estate plans, and deposition questioning regarding these subjects can only serve to harass, annoy, and embarrass. La-Z-Boy's current motion presents the same issue as La-Z-Boy's simultaneously renewed motion to compel discovery on the same topics. *See* D.I. 170. La-Z-Boy's requests for production and requests for admission reach beyond the proper scope of discovery, and La-Z-Boy should not be allowed to question Janice Faller and Leland Schermer on these same topics because the information is not tied to any claim or defense. It is also improper under Florida's heightened standard for discovery of private financial information. *See Berlinger v. Wells Fargo, N.A.*, No. 11-459, 2014 U.S. Dist. LEXIS 165707, *9 (M.D. Fla. Nov. 26, 2014).

La-Z-Boy seeks to compel deposition testimony on subjects outside the proper bounds of discovery. Discovery through deposition testimony is only permitted for a "nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "A district court may deny a motion to compel further deposition questioning when the court determines that the questions are irrelevant." *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 732 (11th Cir. 1984). And a motion to compel should be denied with respect to questions that serve to annoy, harass, or embarrass a witness. *See, e.g.*, Fed. R. Civ. P. 30(d)(3)(A). La-Z-Boy's questions regarding Ms. Faller's Last Will and Testament, and Ms. Faller and Leland Schermer's estate plan, bank accounts, and private marital financial information are not tied to any contract, trade secret, or patent claim or defense and thus are not relevant and will only serve to harass, annoy, and embarrass. Ms. Faller and Leland Schermer answered La-Z-Boy's questions that were specifically tied to Megdal Associates' finances. *See* Exs. D-F; Ex. Q. The deponents only did not answer questions that were unconnected to the issues in this case and could only serve to harass, annoy, or embarrass.

Ex. G; Ex. Q at 309:19-310:22.

Deposing Ms. Faller and Mr. Schermer on private and personal financial and estate planning information is especially inappropriate given the protection afforded such information under Florida law in a case asserting diversity jurisdiction. "Under Florida law, a party's personal financial information is entitled to heightened protection in litigation proceedings." *Berlinger v. Wells Fargo, N.A.*, No. 11-459, 2014 U.S. Dist. LEXIS 165707, *9 (M.D. Fla. Nov. 26, 2014). This protection is warranted as "personal finances are among those private matters kept secret by most people." *Woodward v. Berkery*, 714 So. 2d 1027, 1035 (Fla. 4th DCA 1998) (citing *Winfield v. Div. of Pari-Mutuel Wagering*, 477 So. 2d 544 (Fla. 1985)); *see also Ochoa v. Empresas ICA, S.A.B. de C.V.*, No. 11-23898, 2012 U.S. Dist. LEXIS 111177, *18 (S.D. Fla. Aug. 8, 2012) ("Florida protects an individual's expectation of privacy in financial records."). With this elevated protection, "the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant." *Straub v. Matte*, 805 So. 2d 99, 100 (Fla. 4th DCA 2002). La-Z-Boy has not presented any basis to overcome the heightened protection Florida law affords Ms. Faller and Mr. Schermer's private financial information.

La-Z-Boy asserts that it is entitled to question Ms. Faller and Mr. Schermer on these topics because it is seeking relevant information regarding "whether and how much money Leland Schermer, Plaintiff's key witness, has received from Plaintiff, or will receive if Plaintiff's claims are successful" and "payments from Plaintiff to Leland Schermer and payments and estate matters directed to Mrs. Schermer that are shared by her and Leland Schermer." D.I. 171 at 11. But La-Z-Boy is neither entitled to nor needs Ms. Faller and Mr. Schermer's private personal and marital financial information or estate plans. Megdal Associates has admitted and made clear that Leland Schermer has an interest in this litigation through his marriage to Janice Faller. *See, e.g.*, D.I. 99 at 13-14. Nor is La-Z-Boy's purported justification regarding witness credibility sufficient to require Ms. Faller and Mr. Schermer to disclose their personal financial information, and will and estate plans. D.I. 171

15

at 11. La-Z-Boy does not—and cannot—cite a single case in support of such a dramatic position requiring LLC members involved in commercial litigation to disclose their *personal* financial information, and Last Will and Testament and estate plans in discovery. Further deposition testimony on these topics is improper and only serves to unreasonably annoy, embarrass, and harass Ms. Faller and Mr. Schermer. Therefore, the Court should grant Megdal Associates' cross-motion to limit and deny La-Z-Boy's motion to compel deposition testimony of Janice Faller and Leland Schermer.

**II.    Megdal Associates' objections to La-Z-Boy's questioning of Janice Faller and Leland Schermer were proper because they preserved Megdal Associates' positions in the motions on La-Z-Boy's requests for production and the topics of questioning only serve to embarrass, annoy, and harass.**

Counsel for Megdal Associates made proper objections to La-Z-Boy's questioning during Ms. Faller and Mr. Schermer's depositions. "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). The rule specifically provides that instructions not to answer are proper in order to present a motion to the limit deposition testimony based "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3). La-Z-Boy inaccurately argues that Megdal Associates' objections were based solely on relevance. Instead, Megdal Associates' objections were based on La-Z-Boy's purpose to embarrass, annoy, and harass Ms. Faller and Mr. Schermer through these lines of questioning. Ex. G at 40:19-44:15, 160:21-161:14; 257:22-259:17; Ex. Q at 309:19-310:22.[4] In this case, counsel for Megdal Associates made proper objections in order to bring a motion to limit under Rule 30(d)(3).

Objections to deposition questions regarding irrelevant and intrusive personal financial

---

[4]    Megdal Associates' objections at Ms. Faller and Mr. Schermer's depositions regarding private personal and marital financial and estate plan information are consistent with Megdal Associates' objections to the requests for admission at issue in La-Z-Boy's motion to compel. *See* Ex. B.

matters are not improper. Megdal Associates recognizes that relevance objections are strongly disfavored during depositions. However, certain circumstances justify the use of such objections to prevent annoying, embarrassing, or harassing questioning beyond the proper scope of discovery. "Clearly, inquiry into irrelevant topics can constitute bad faith, or unreasonable annoyance, embarrassment or oppression, as described in Rule 30(d)(3). For example, asking a deponent questions about personal or confidential matters, such as his or her medical history, sex life or financial condition, would quickly qualify if such matters had no possible relevance to the case." *Van Stelton v. Van Stelton*, 2013 U.S. Dist. LEXIS 145999, *44, 48 (N.D. Iowa Oct. 9, 2013). La-Z-Boy's deposition questions regarding Ms. Faller and Mr. Schermer's financial condition fall within these categories of highly personal and confidential matters properly addressed in a motion to limit.

In a very similar case, the court denied a motion to compel further deposition testimony regarding the party-witness' private financial matters after the witness' counsel instructed him not to answer questions at a deposition. *See Dent v. United States Tennis Ass'n*, 2010 U.S. Dist. LEXIS 31052, *2-3 (E.D.N.Y. Mar. 30, 2010). The topics at issues included "questions concerning the deponent's compensation and net worth concern private matters." *Id.* at *2. These financial topics "ordinarily enjoy a measure of protection in litigation, including some demonstration of relevance before disclosure is required" because "questions about these matters tend to be annoying and embarrassing, and in the absence of relevance, may be unreasonably so." *Id.* The court rejected arguments that the deposition testimony was within the scope of discovery because "[t]he reasons offered by the plaintiff for asking the questions are *flimsy* . . . and the suggestion that the amount of his compensation would tend demonstrate the defendant's *bias* strikes the court as *frivolous*." *Id.* (emphasis added). La-Z-Boy's arguments in support of its motion fare no better.

Megdal Associates' counsel objected to La-Z-Boy's similar questions, which sought irrelevant and highly personal and confidential testimony on Ms. Faller and Mr. Schermer's private, personal and marital financial information and estate plans. Megdal Associates'

17

counsel made these objections in light of the then pending motions before the Court, which La-Z-Boy has since renewed, specifically addressing whether La-Z-Boy is entitled to discovery on the same topics. Had Ms. Faller and Mr. Schermer answered La-Z-Boy's questions, their responses would have rendered Megdal Associates' objections to La-Z-Boy's requests for admission—and the then pending, fully briefed opposition—entirely moot. Megdal Associates did not want to adjourn the entire depositions to move for protective orders over one area of dispute.

Megdal Associates does not dispute that an instruction not to answer other than on the basis of privilege is relatively rare. And the cases cited by La-Z-Boy only stand for that general rule. La-Z-Boy relies on cases involving egregious instances of deposition obstruction that bear no similarity to the instance case. In one of those cases, for example, "numerous times during the course of the depositions, counsel for the witness made speaking objections which amounted to providing the witness with counsel's preferred answer to the question. *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla. 1999). In *Summit Towers Condominium Association*, the court "identified no fewer than twenty-two instances" where a witness was instructed not to answer a question based solely on "relevancy grounds, objection to form or an unspecified legal basis." *Summit Towers Condo. Ass'n v. QBE Ins. Corp.*, 2012 U.S. Dist. LEXIS 59633, *5 (S.D. Fla. Apr. 5, 2012). In contrast, none of the cases cited by La-Z-Boy involves questions that are already subject to pending discovery motions. Nor is there even a suggestion that Megdal Associates' counsel otherwise defended the depositions improperly; instead, the only dispute is the limited and finite dispute about personal and marital finances and estate plan, which is already the subject of pending motions. Indeed, counsel for Megdal Associates defended five depositions in this case, and in all those depositions only interposed limited objections to form and, if necessary, privilege. *See, e.g.*, Exs. D, E. Thus, under such circumstances, and particularly where private personal and marital financial information is involved, counsel's objections to highly personal and private matters were properly made

18

during Ms. Faller's and Mr. Schermer's depositions.

For this reason, La-Z-Boy's motion should be denied and Megdal Associates' motions to limit the deposition should be granted. La-Z-Boy's contention that Megdal Associates failed to properly seek relief from the Court rings hollow. First, La-Z-Boy complains that Megdal Associates did not file its original cross-motion to limit Janice Faller's deposition testimony before the deposition. Then, in complete contradiction, in the same brief, La-Z-Boy complains that Megdal filed a protective order for Leland Schermer's deposition before the deposition, "before the Court had any factual context for how the questions might be asked." D.I. 171 at 15. La-Z-Boy cannot have it both ways. Regardless, Megdal Associates' cross-motion to limit the depositions is proper for the legal basis set forth above: the information sought is not only irrelevant, but sought to harass, annoy, and embarrass a member and her husband of a business entity in a business dispute. Nor was Megdal Associates required to seek any relief earlier. To the contrary, Megdal Associates worked extensively in the meet-and-confer process to avoid any such motion practice. Megdal Associates also believed that terminating either Ms. Faller or Mr. Schermer's entire deposition to move for protection on this one issue did not serve to secure a "just, speedy and inexpensive" resolution, especially because there was much else to cover and resolving the issues regarding questioning on the personal financial and estate planning rose or fell with this Court's ruling on nearly identical issues in the then pending motions. *See* Fed. R. Civ. P. 1. And, of course, the Federal Rules of Civil Procedure did not require Megdal Associates to terminate the deposition, but rather permit the objecting party to file a motion afterward. *See* Fed. R. Civ. P. 30(d)(3) (permitting, but not requiring, objecting party to suspend deposition).

The timeline above of Megdal Associates' work with La-Z-Boy to see if additional motion practice was necessary establishes beyond doubt Megdal Associates' extensive good-faith efforts and La-Z-Boy's intransigence. Megdal Associates' efforts not only were indicative of a good-faith meet-and-confer process expected by this Court's local rules, but

also precisely what the new amendments to Rule 1 expect of parties. Indeed, the recently

released Committee notes on the 2015 amendment to Rule 1 discuss exactly such misuse of

process by La-Z-Boy, which causes increase cost and delay:

> Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends. But discussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay. Effective advocacy is consistent with — and indeed depends upon — cooperative and proportional use of procedure.

Fed. R. Civ. P. 1, 2015 Committee Notes. La-Z-Boy's repetitive efforts at seeking non-

relevant, personal and private financial information related to Mr. Schermer and Ms.

Faller's stands in contrast to the Rules' protections against such wasted time and expense.

## Conclusion

La-Z-Boy's motion seeks to re-open Janice Faller and Leland Schermer's depositions

to pursue non-discoverable and protected information that is not relevant to any claim or

defense in this case. La-Z-Boy's original attempt to pursue such questioning was improper

because it only served to harass, embarrass, and annoy Ms. Faller and Mr. Schermer by

seeking private and personal information on topics irrelevant to the parties' dispute.

Therefore, Megdal Associates respectfully requests that the Court deny La-Z-Boy's motion

to compel and grant Megdal Associates' cross-motion to limit Janice Faller and Leland

Schermer's deposition testimony.

## Local Rule 7.1(a)(3) Certification

Megdal Associates certifies that it conferred with La-Z-Boy in a good-faith effort to

resolve the issues in Megdal Associates' cross-motion, but the issues were not resolved.

Counsel for Megdal Associates spoke with counsel for La-Z-Boy on October 29, 2015

regarding the deposition questions at issue in the present cross-motion. No agreement to

limit the depositions was reached.

Dated: <u>December 3, 2015</u>   Respectfully submitted,

            By: <u>*/s/Patrick Arenz*     </u>

            Ronald J. Schutz (*Admitted Pro Hac Vice*)
            <u>rschutz@robinskaplan.com</u>
            Patrick M. Arenz (*Admitted Pro Hac Vice*)
            <u>parenz@robinskaplan.com</u>
            Shira Shapiro (*Admitted Pro Hac Vice*)
            <u>sshapiro@robinskaplan.com</u>
            Ari Lukoff (*Admitted Pro Hac Vice*)
            <u>alukoff@robinskaplan.com</u>
            **Robins Kaplan LLP**
            800 LaSalle Avenue
            Minneapolis, MN 55402-2015
            Telephone: (612) 349-8500
            Fax: (612) 339-4181

            Jonathan J. Marcus (*Admitted Pro Hac Vice*)
            <u>jmarcus@robinskaplan.com</u>
            Michael Kolcun
            Florida Bar No. 0086043
            <u>mkolcun@robinskaplan.com</u>
            **Robins Kaplan LLP**
            601 Lexington Avenue, Suite 3400
            New York, NY 10022-4611
            Telephone: (212) 980-7400
            Fax: (212) 980-7499

            --and—

            Scott G. Hawkins
            Florida Bar No. 0460117
            <u>shawkins@jonesfoster.com</u>
            James C. Gavigan
            Florida Bar No. 0085909
            <u>jgavigan@jonesfoster.com</u>
            **Jones, Foster, Johnston & Stubbs, P.A.**
            Flagler Center Tower
            505 South Flagler Drive, Suite 1100
            West Palm Beach, Florida 33401
            Telephone: (561) 659-3000
            Fax: (561) 650-5300

            **Attorneys for Plaintiff**
            **Megdal Associates, LLC**

86304678.1

**Certificate of Service**

I hereby certify that on December 3, 2015, I filed the foregoing document and a declaration in support on CM/ECF, and thereby served the foregoing document and a declaration in support on the following persons via the Court's CM/ECF system:

Glenn E. Goldstein, Esq.
John L. McManus, Esq.
Greenberg Traurig, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477
E-mail: goldsteing@gtlaw.com
E-mail: mcmanusj@gtlaw.com

Adam B. Landa, Esq.
Joshua R. Brown, Esq.
Greenberg Traurig, P.A.
450 S. Orange Avenue, Suite 650
Orlando, Florida 32801-3371
Telephone: (407) 420-1000
Facsimile: (407) 841-1295
E-mail: landaa@gtlaw.com
E-mail: brownjr@gtlaw.com

Kurt Kappes, Esq.
Greenberg Traurig, LLP
1201 K Street, Suite 1100
Sacramento, California 95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
E-mail: kappesk@gtlaw.com

Dated: December 3, 2015                                  **ROBINS KAPLAN LLP**


                                                          By: */s/ Michael Kolcun*